Good morning. Glenn Danis for Appellant Ms. Vitolo. I'd like to reserve three minutes for rebuttal, if I may. The appeal, the instant appeal, is actually fairly simple and revolves on essentially one single legal issue that's now been resolved. In the district court, after the Concepcion case came out by the U.S. Supreme Court, appellants' individual wage and hour claims were sent to arbitration. Only vestigial jurisdiction in order to monitor the arbitration and ultimately to enter judgment after the arbitration was retained by the district court. Bloomingdale's readily admits in its briefs that the district court enforced a waiver of PAGA, which is to say a prohibition on seeking or the right to seek aggregate penalties either in court or in arbitration. This is at Bloomingdale's brief at page 48. The enforcement of the waiver of PAGA is unenforceable now, conclusively as a matter of state law in the Iskandian case, and now is also unenforceable in federal, under federal case law, by the Sokob versus Luxottica case, which I believe we filed. So in the meantime, those cases hadn't been decided when the district court sent this case to arbitration, correct? That's correct, Your Honor. Okay, so it goes to arbitration, right? Correct. There's a full-blown arbitration proceeding. Yes, Your Honor. And your client loses on all claims, right? Yes. Why doesn't that just end everything? Well, because the nature of standing under PAGA and under the Labor Code for Individual Damages Claims differs significantly. The standing provision for PAGA. Just to be an aggrieved person. Correct. So she lost on it. The way the complaint was pled, you alleged each violation within each cause of action, you alleged damages under PAGA as well for each one. I don't believe we alleged damages. Well, you alleged relief under PAGA, whatever you're entitled to. But actually, it's a very significant difference, the difference between them, because they are, even though there are similarities between PAGA and seeking damages or other relief under the Labor Code, they're actually quite different. And that's, I take it, Your Honor. Well, you need a violation in order to recover under PAGA. You need a violation. You don't need to have sustained any injury. You need to be an aggrieved person, which means there's been a violation and you've been harmed in some way. No. Well, 2699. What does aggrieved mean? Well, I'd like to read from the statute. Under 2699C, which is the provision that sets out the definition of an aggrieved employee under PAGA, it's any person who is employed by the alleged violator and against whom one or more of the alleged violations was committed. Now, I understand that. What is a violation? What does a violation mean? So a violation means that there was a failure by an employer to meet its obligations under the Labor Code. And the employee suffered no harm. It may not. There are a number of cases like McKenzie v. FedEx by Judge Feist, which is, I believe, a 2010 case that actually go into great detail discussing the differences. Well, in any event, look, the problem is you did have an arbitration proceeding. So why couldn't that be res judicata now and everything is just resolved? You're all done. It's not res judicata. Over and done with. It's not res judicata. Or collateral estoppel. Because in the appellate record, there are at least two instances of having, of Bloomingdale's having violated the law, having violated Section 226.7B, which requires them to provide uninterrupted meal breaks. And they paid premiums for it, which would mean that Ms. Vitolo has not suffered any damages. She hasn't been injured. But there was a violation, which provides her with standing under the Labor Code. In fact, the Supreme Court in Kirby v. Immues, the California Supreme Court, said specifically that the violation of the meal break period provision is the failure to provide it. It is not the giving or not giving of a premium afterwards. So even though Bloomingdale's corrected its mistake, Ms. Vitolo can still maintain APAGA? This is correct. Conclusively, as a matter of California law, the California Supreme Court has said that employers don't get to choose. They don't get to say we're either going to provide the meal break or we're going to pay a premium. The failure to provide the meal break is itself the violation for purposes of APAGA. And it makes no difference that they paid the premium wage for having recognized. It means that they don't owe damages to Mrs. Vitolo. But it doesn't mean that if the Labor Commissioner came in to prosecute or to audit Bloomingdale's and to see whether or not they were violating the Labor Code, it does not mean that the Labor Commissioner would be precluded from issuing citations for violations. That's what APAGA is about. It's focused solely on the defendant's conduct. So let me ask you this. Let's say you go back to the district court. What's left to litigate? Well, it could be there are a number of things that could be decided. Our position would be. Well, what are those things that could be decided? So our position would be we would go back to the district court and we would brief whether or not we, in fact, have suffered an injury here. We believe we have, and we believe that for APAGA purposes we have standing. They would say that we haven't. That would have to be determined. Afterwards, we would also, let's say the district court said, okay, we find that you did, in fact, suffer injury and you have standing to proceed with APAGA. There would be an issue about whether we have the right to proceed with respect to the other violations alleged in the complaint or whether we're limited to seeking penalties for the one that we allege that we suffered. That's an issue that the courts have been wrestling with as well, because under the APAGA statute it says that the APAGA plaintiff needs to have suffered, needs to have been affected by at least one of the violations. So our position is that having to be affected by at least one of the violations means that if you have one, you can collect for the others. There's a district court case, DeSemis, from 2007 that found that very thing. The case is actually DeSemis. Let me ask you this. You know, there's some recent California Court of Appeal opinions that I, when I was preparing for today, a case called Williams v. Superior Court. Yes. And a case called Perez v. Uhaul. Yes. Both of those seem to say that you can't split off an, you can't carve up APAGA claim. Correct. It stays together as one. Those cases, I'm actually counsel in Williams. Those cases stem from defendants' attempts to force a plaintiff to prove his or her standing before being able to seek penalties on other, for other violations. The obvious reason. It seems that when I read, you know, when you read Iskanyan, you read our Ninth Circuit case, you read those two, Williams and Uhaul, it seems to me that if this matter were before the district court today, the court wouldn't do what it did. Precisely. I think that's precisely correct. And what we're really talking about here at the end of the day is the fact that the district court's ruling below will have preclusive effect as the penalties for thousands of employees and against the state of California. And it will foreclose the ability to seek civil penalties for a significant amount of time. Well, the problem is, though, you know, the law wasn't, you know, the law hadn't yet developed completely. She did get a full-blown arbitration proceeding. And results of an arbitration proceeding can be collaterally, can form a basis for collateral estoppel. But not for issues not decided. Her standing under PAGA simply wasn't decided. I understand the whole matter of collateral estoppel has not been addressed. I understand that to Bloomingdale's, these are picayune differences. These are not, in fact, trivial. These are significant differences that lead to the claim either being eviscerated or not. Okay. Save the rest of your time for rebuttal. Good morning, Your Honors. I'm David Martin. I'm here on behalf of Bloomingdale's. A couple of things I just want to make clear. As we were talking about aggrieved employees, the law is in the Supreme Court, California Supreme Court has spoken on it, is very, very clear. You must establish a labor code violation in order to proceed as an aggrieved employee in a PAGA representative action. The arbitration itself definitively and absolutely found that Ms. Votolo had suffered no labor code violation. Well, we know today, though, that if this matter had been before the district court today and you had filed your motion to remand these matters or refer these matters to arbitration, it's pretty clear the answer would have been no. Your Honor, I respectfully disagree. Well, if you read the U-Haul case and you read the Williams case, you can't split up a PAGA claim. Yes, but I'm not sure about the Williams case, but I know the U-Haul case. In that case, the only claim asserted was a PAGA representative claim. There was no separate causes of action for a labor code violation. Here, there were separate causes of actions for a labor code violation, and it is appropriate under those cases to send to arbitration the labor code violations for resolution, if they're separately pled, and then after that proceeding is over, to then go back to the district court and litigate your PAGA representative action. Obviously, if there are no labor code violations, you need not do that, and that is also consistent with the Bloomingdale's arbitration agreement, which specifically says if there are some claims that can be arbitrated and some not, you go to arbitration first, and then you proceed to go back to the court. You're supposed to read these complaints generously or whatever to the pleader, right? Those are basic rules. And so when you go to the way this complaint was framed, the first amended complaint, like the first cause of action is for violation of California Labor Code Section 510.1198, it goes through and makes the allegations, and then at the very end of that cause of action, it says, pursuant to 2699, which is the PAGA statute, plaintiff and other class members and all aggrieved employees are entitled to recover civil penalties. In addition, they each have a separate cause of action for labor code violations, and in the prayer for relief, embedded in the prayer for relief, they include prayer for relief for civil penalties. But it's very clear that these separately pled causes of action. I would be very surprised today that a district court judge would, after these cases, would split up a PAGA claim and say, well, we've got to go figure out whether you're an aggrieved employee. Go to arbitration and arbitrate that. They're not going to do that. I actually believe in the third Franco case, which is in the trial court in that case, did exactly that. They set the labor code violations for resolution in the arbitration, and then after that's over, you go into court. Let me ask you this. After all that's happened with Escania and our case, I forget the name of our case. It flips my mind at the moment, where we said Escania was okay. These two recent court of appeal opinions, why don't we just send this case back to the district court and let the district court figure out what's going to happen next? For a very simple reason. There is no way she can establish standing to proceed with a representative action because they fully litigated all labor code violations in the arbitration. That arbitration decision is final. You don't have to give collateral estoppel effect. It's not the issue of collateral estoppel effect. The issue is, is there a labor code violation? The arbitration decision is a final decision. It's binding, and it specifically says there are no labor code violations. So there is nothing to send back because there's nothing to decide. Because amalgamated, the California Supreme Court case makes it very clear. You must establish a PAGA. To be an agreement, you must establish individual labor code violations. It's impossible here. I would just like to address one other issue that was noted, is that it was mentioned that Bloomingdale admitted a violation. There's really, because we paid premiums for meal break modifications, there's really nothing in the record on that number one. But I will tell you that Bloomingdale's had a policy before the Brinker v. Perry court case came out, is if you clocked out late for lunch, you automatically got one hour of pay, and that's what's being referred to. However, after Brinker, the fact that you may have clocked out one minute late for lunch does not establish a violation. Brinker specifically says that as long as you provide the meal break, you allow them to take a meal break, that suffices. We're not obligated to police the breaks or to ensure that no work is done during the breaks. Brinker also says that work by employee during a break does not by itself breach the employer's obligation to provide a break. So there is, looking at scattered documents in the record, does not establish that there has been a violation. I mean, I will say this, after seven years of litigation, over a six-week employee was still here. She hasn't, we have honored, we have secured a denial of class certification. We then had a three-day arbitration where there's no labor code violations. And after all these years, someone is desperately trying to seek a remedy that does not exist and to reestate a claim that does not exist. It's been seven years for a six-week employee. It's rather extraordinary. But laws changed a lot since you started this. Yes, because when we started, we couldn't even send anything to arbitration because Concepcion had to come in. But, yeah, it's been a long haul. And, but the point is, in my view, there is, if there's no labor code violation, there is no aggrieved employee, there's nothing to send back to the district court because, by definition, Ms. Sotolo can't possibly establish. Thank you. Okay. Unless there's any other questions, I don't think I have anything to add. Okay. Thank you, Your Honors. Thank you. Just a couple of points in rebuttal. The arbitration simply doesn't preclude plaintiff from seeking to establish standing under PAGA. And, you know, with respect to the violations of the meal break provision that we spoke of earlier, which I believe provides standing for plaintiff, 226.7c of the labor code says, if an employer fails to provide an employee a meal or rest or recovery period in accordance with state law, the remedy is paying a premium. Clearly, the paying of the premium is only under, is made only under certain circumstances, which is where there has been a failure to provide a meal period break in accordance with state law. That is precisely what we have here. These aren't random documents in a record. These are, this is evidence in the appellate record that demonstrates that there were, in fact, at least a very, a very, a basis that should be briefed and argued in the district court for providing PAGA standing. You know, for myself, I have a hard time, you know, if the employer corrects the violation, it's difficult to accept the notion that she's still an injured for purposes of payment. I understand, Your Honor, and I think that that's why in briefing we would explain to Judge Fischer that PAGA claims and PAGA actions being law enforcement actions have a different focus of them, which is why to say that this is an action that's been going on for many years for an employee who only worked a number of weeks is simply a false statement. This is a law enforcement action that's intended to correct and deter violations as against thousands of California retail employees. And the final thing I would say is that opposing counsel mentioned that their motion to compel arbitration was something that couldn't have been filed before Concepcion. They filed it before Concepcion was decided. Everything was put on hold. So Judge Fischer, on her own volition, decided to hold on to the motion until after Concepcion was decided, thinking it would be relevant, which it was, of course. But that's not that clearly the statement that we didn't think that we could have filed it before Concepcion doesn't hold any water. Okay. All right. Thanks very much, Your Honor. If there's not anything else, I'm done. Okay. Thank you, counsel. We appreciate your arguments in this long-running case. Matter is submitted. And that ends our session for today. All rise.
judges: Pregerson, Noonan, Paez